IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA      :
                         :

     v.                     :     4:CR-07-389-01
                         :     (JUDGE VANASKIE)

SEAN BEST                 :
                         :

<u>MEMORANDUM</u>

_____On April 9, 2009, almost six months after the Hon. James F. McClure, Jr., of this Court denied Defendant Sean Best's motion to suppress evidence, defendant Best, represented by counsel other than the attorney who had represented him at the time of the suppression ruling, moved for reconsideration of Judge McClure's decision.  He also sought to advance a "supplemental" motion for suppression.  Defendant Best's motion for reconsideration of Judge McClure's October 22, 2008 ruling and his supplemental suppression motion present for resolution the following issues:

!     Does evidence presented at hearings conducted by Judge McClure on April 21 and 27, 2009 undermine his prior determination that law enforcement officers did not conduct an illegal search of the residence located at 608 McMinn Avenue, Williamsport, Pennsylvania, incident to the arrest of Defendant Best on October 2, 2007?

!     Does evidence that one of the law enforcement officers participating in Best's arrest on October 2, 2007 was disciplined in connection with activities involving a search that occurred nearly one year after Best's arrest in a completely unrelated matter warrant

re-opening the suppression hearing record?

! Should Best be allowed to present a "supplemental" motion to suppress challenging the sufficiency of the affidavit submitted in support of the search warrant issued on October 3, 2007 when he had an ample opportunity to present this issue in his original suppression motion?

! If it is appropriate to consider the supplemental motion, was there sufficient information in the affidavit supporting the search warrant application to provide probable cause for issuance of the search warrant?

Because the judge issuing the search warrant had an ample basis for finding a fair probability that evidence of criminal activity would be found at the McMinn Avenue property and there is no evidence that the decision to seek a search warrant was the product of a warrantless search, the motion for reconsideration and supplemental motion for suppression (Dkt. Entry 726) will be denied.[1]

I. BACKGROUND

A lengthy investigation into crack cocaine trafficking in the Williamsport area

---

[1] For the convenience of the reader of this Memorandum opinion in electronic format, hyperlinks to the Court's record and to authority cited herein have been inserted. The Court accepts no responsibility for, and does not endorse, any product, organization, or content at any hyperlinked site, or at any site to which that site might be linked. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

culminated with the issuance of a number of arrest and search warrants on October 1, 2007. Among the individuals named in arrest warrants were Sean Best and Leanika Johnson, who were residing at that time at 608 McMinn Avenue, Williamsport, Pennsylvania. Believing that they did not have probable cause to secure a warrant to search the McMinn Avenue premises at that time, law enforcement officials did not include this location in a search warrant application presented to the Hon. Malcolm Muir on October 1, 2007.[2]

At approximately 6:30 a.m. on October 2, 2007, a team of law enforcement agents from the Federal Drug Enforcement Agency ("DEA"), the Pennsylvania State Police ("PSP"), and the Williamsport City Police Bureau arrived at 608 McMinn Avenue to execute the warrants to arrest Best and Johnson. The law enforcement team included Sergeant Joseph Tripp, Corporal James Warner, and Trooper Tyson Havens of the PSP, along with Chief of Police Gary Whiteman and Lieutenant David Bailey of the Williamsport Police Department. Notably, DEA Special Agent Timothy Crowley, who was the lead investigator for this matter

---

[2] Judge Muir issued search warrants for a number of Williamsport residences on October 1, 2007, including properties located at 828 Memorial Avenue, 723 High Street, 725 High Street, and 824 Park Avenue. Significantly, Best and Johnson had resided at 723 High Street before moving to the McMinn Avenue address, and the search warrant application considered by Judge Muir had included information about drug trafficking occurring at 723 High Street while Johnson and Best lived there. It appears that Best and Johnson had been residing at the McMinn Avenue location for only a few weeks at the time the warrants were sought.

3

and the affiant on search warrant applications, was not present at the McMinn Avenue location.  Instead, he was executing arrest and search warrants at a different location.

The law enforcement team gained access to the interior of 608 McMinn Avenue when defendant Best's son, Ivan Northington, answered their knock at the front door of the residence.  Ivan was handcuffed and the law enforcement team proceeded to the second floor where they secured Best and Johnson.  After Best and Johnson were escorted to the first floor, a protective sweep of the premises was conducted.  No contraband was found or seized during the protective sweep.

Approximately thirty minutes after the arrival of the law enforcement team at 608 McMinn Avenue, Best and Johnson were removed from the premises and transported to police headquarters.  Most of the arrest team also departed at that time.  Remaining behind with Ivan Northington (a high school student), his brother Donovan (a middle school student), and Ms. Johnson's eight-month old infant were Corporal Warner and Sergeant Tripp of the PSP and Chief Whiteman and Lieutenant Bailey of the Williamsport Police Department.  Lieutenant Bailey was a canine handler, and had his patrol dog with him.

The law enforcement officers had remained at the premises awaiting the arrival of staff of the Lycoming County Children and Youth Services ("C&Y") to take custody of Ivan, Donovan, and the eight-month old baby.  At approximately 7:00 a.m. on October 2, 2007, Heather Wood of C&Y, accompanied by Captain William Weber of the Williamsport Police

4

Department, arrived at 608 McMinn Avenue. Ms. Wood retrieved items for the infant from the first floor, while Captain Weber accompanied Ivan and his brother Donovan to the second floor, where they retrieved items necessary to attend school that day. Ivan and Donovan placed their belongings in separate duffle bags. Upon their departure from the residence, the patrol canine handled by Lieutenant Bailey conducted a sniff of the duffle bags before they entered the C&Y minivan.[3]

At the evidentiary hearing held on April 21, 2009, Ivan testified that he saw Lieutenant Bailey enter the premises with the patrol dog as the C&Y minivan was pulling away. Lieutenant Bailey testified that he did not recall going into the home. He also testified that he did not recall having his patrol dog sniff the duffle bags.

Ivan and Donovan were transported to the Williamsport police headquarters. They were then taken to school. Later during that day, Ivan's mother, who resides in Philadelphia, arrived to take Ivan and Donovan back to Philadelphia. Ivan, accompanied by Joseph Weber of C&Y, returned to 608 McMinn Avenue at approximately 2:00 p.m. He and Ivan were able to enter the premises without difficulty.[4] Ivan, who at all times was

---

[3] Lieutenant Bailey testified that the patrol dog he had at that time was not capable of detecting narcotics, but was used instead for apprehending suspects and protection, as well as to determine the presence of firearms or explosives. (Suppression Hr'g Tr., Vol. 4, Dkt. Entry 751, at 9, 14.)

[4] Ivan testified that the front door was unlocked. (Suppression Hr'g Tr., Vol. 3, Dkt. Entry 743, at 13.) Mr. Weber testified that Ivan unlocked the front door with a key. (Suppression Hr'g Tr., Vol. 4, Dkt. Entry 751, at 30.)

accompanied by Mr. Weber, retrieved clothing and personal belongings for him and his

brother, and then left the premises.[5]

At the time that Special Agent Crowley applied for search warrants for other

locations on October 1, 2007, he and the Assistant United States Attorney had determined

that they did not have sufficient information to support a finding of probable cause to believe

that evidence of criminal activity would be found at 608 McMinn Avenue.  Accordingly, they

did not have the authority to search the premises at that time, and Defendant Best, at the

time of his arrest, refused to consent to a search of the property.

At approximately 11:00 a.m. on October 2, 2007, PSP Trooper Kim Bedell had his

narcotics canine, Ellie, check the exterior of 608 McMinn Avenue for drugs.  Specifically,

Trooper Bedell, who had been at another of the locations where arrests had taken place

earlier that morning, had the narcotics dog sniff the exterior of building in the vicinity of the

front and rear doors as well as the window seams to determine whether narcotics could be

detected to be present at that location.  The canine search was negative.

On October 3, 2007, DEA Special Agent Crowley appeared before Judge Muir to

secure a search warrant for 608 McMinn Avenue.  Although the law enforcement officials

had believed that they lacked probable cause to search this property before seeing Judge

---

[5] Ivan testified that he noticed that drawers in a dresser in his father's bedroom had been pulled out and left open.  (Suppression Hr'g Tr., Vol. 3, Dkt. Entry 743, at 14.)  He also stated that "stuff in the dresser was pulled out."  (Id.)

Muir on October 1, 2007, Special Agent Crowley had received information after securing those warrants from one of the confidential informants upon whom he had relied to obtain those warrants. This information indicated that Best had stored a quantity of drugs at 608 McMinn Avenue.

The affidavit submitted in support of the application consisted of the first 37 paragraphs of the affidavit that had been used to secure warrants to search the other properties mentioned above, along with the following additional paragraphs:

38. 608 McMinn Avenue is the residence of Leanika Johnson, a/k/a, "Pookie" and Sean Best, a/k/a, "Shiz". Johnson and Best are known as being members of a drug trafficking organization led by Dorothy Robinson, a/k/a, "Dorothy Johnson," a/k/a "Mae-Mae," with multi-state ties to Florida and Alabama. During the time of this conspiracy of January 1, 2003, to the present, Johnson and Best have been responsible for the distribution of kilograms of cocaine and crack cocaine in the Williamsport, Pennsylvania, area.

39. Sean Best and Leanika Johnson previously sold crack cocaine and cocaine from addresses they resided in to include 723 High Street, Williamsport, Pennsylvania.

40. On October 3, 2007, Confidential Informant #4 (hereinafter CI#4) related that on September 30, 2007, Best had traveled to Philadelphia, Pennsylvania, and obtained a quantity of cocaine. On October 1, 2007, CI#4 stated that Best returned to Williamsport, Pennsylvania, with the quantity of cocaine and is storing it at 608 McMinn Avenue, Williamsport, Pennsylvania. On October 3, 2007, CI#4 also stated that the drugs are still concealed at 608 McMinn Avenue, Williamsport, Pennsylvania.

(Appl. and Aff. for Search Warrant.)[6]

Based upon the information provided in the search warrant application and affidavit, Judge Muir issued the requested warrant. Agent Crowley, accompanied by other law enforcement officers, conducted the search on October 3, 2007. The door to the premises was rammed to gain entry. The state police narcotics dog, Ellie, was used in connection with the search. She alerted on the toilet tank in the second floor bedroom. Officers retrieved from inside the tank a plastic bag holding separate plastic bags of crack cocaine and powder cocaine. The evidence found during the October 3, 2007 search forms the premise for Count 27 of the Third Superseding Indictment returned in this matter on August 14, 2008, which charges that on or about October 2, 2007, Best and Johnson knowingly, intentionally and unlawfully possessed with intent to distribute fifty and more grams of crack cocaine.[7]

On May 30, 2008, Best moved to suppress the evidence seized from 608 McMinn Avenue on October 3, 2007, asserting that the drugs and other evidence were actually seized on October 2, 2007, and not as a result of any search that occurred on October 3,

---

[6] This informant had been mentioned in earlier paragraphs of the affidavit supporting the search warrant application. In particular, CI#4 is alleged in paragraph 24 of the affidavit to have participated in a controlled buy of crack cocaine from other participants in the alleged drug trafficking conspiracy, and he is alleged to have provided information concerning various aspects of the alleged conspiracy.

[7] Ms. Johnson has entered a plea of guilty to a misprision of a felony charge in violation of 18 U.S.C. § 4.

2007.  Thus, Best claimed that the evidence was the product of a warrantless search.

Notably, Best did not challenge the validity of the search warrant itself.  Specifically, he did

not challenge the sufficiency of the warrant application and supporting affidavit.

Following evidentiary hearings conducted on September 23 and October 22, 2008,

Judge McClure denied the suppression motion.  In his opinion, Judge McClure observed

that while it was "unnecessary to discuss the search warrant because Defendant Best has

not challenged its validity," he found that "it was validly issued pursuant to probable cause."

(October 22, 2008 Order Dkt. Entry 552, at 3 n. 1.)  Rejecting Best's contention that

evidence had been found and seized illegally on October 2, 2007, Judge McClure stated:

> Reviewing the protective sweep in the case at bar . . . we find that it did not
> violate the Fourth Amendment.  The law enforcement officers who conducted
> the sweep indicated that Best's residence was a well-known drug trafficking
> center.  Moreover, Johnson and Best were not the only individuals present
> when the arrest warrants were served.  We understand the dangers that
> could reasonably await law enforcement officers at such a location and find
> that the protective sweep of Best's residence, immediately following the
> arrest, was permissible under the circumstances.  Further, because the
> defendant has failed to contradict the government's evidence which
> demonstrates that the officers seized no evidence and conducted only a
> cursory sweep of the premises on October 2, 2007, we hold that the Fourth
> Amendment was not violated.

(Id. at 5.)

Following the hearing, Best expressed his displeasure with his Court-appointed

counsel's failure to make arrangements to have Best's son, Ivan, testify at the suppression

hearing.  Shortly thereafter, the lawyer who represented Best at the suppression hearing

moved to withdraw as counsel, having been advised that Best had submitted a claim against him with the Pennsylvania Supreme Court Office of Disciplinary Counsel. (Dkt. Entry 574.) The motion to withdraw was granted, and on November 5, 2008, Best's current attorney was appointed.

On April 9, 2009, Best, through his new counsel, moved for reconsideration of the denial of the suppression motion on the ground that he had been unable to present a witness or witnesses at the suppression hearing to support the claim that there was an illegal search of the residence on October 2, 2007. The motion included as a second ground for suppression a challenge to the validity of the search warrant itself, arguing that the affidavit submitted by the government was not sufficient to establish probable cause in that it was conclusory and provided inadequate detail to confirm the reliability, veracity, and bases of the information supplied by CI#4. (Dkt. Entry 726.)

On April 21, 2009, Judge McClure re-opened the record to allow Best to present witnesses on the question of whether an illegal search had occurred on October 2, 2007. (Dkt. Entry 743.) With respect to the supplemental ground presented in the motion, *i.e.,* the sufficiency of the search warrant application, Judge McClure stated that the procedural propriety of the supplemental ground would be "dealt with . . . in due course in the briefing that remains to be done." (Id. at 4.)

The sole witness presented on behalf of Defendant Best at the April 21st hearing

was his son, Ivan Northington.  The government was permitted leave to call rebuttal witnesses.  On April 27, 2009, Lieutenant Bailey, Ms. Wood, and Joseph Weber testified on behalf of the government.  The suppression hearing record was then closed.  Judge McClure issued an Order on April 27, 2009, establishing a briefing schedule.  (Dkt. Entry 745.)

On May 15, 2009, Best's counsel moved for an extension of the briefing schedule, representing that on May 14, 2009, the government confirmed for the first time that the PSP did utilize a drug-sniffing dog on October 2, 2007.  Counsel also represented that on May 14, 2007, the Government disclosed Brady information pertaining to one of the officers who participated in the arrest of Defendant Best on October 2, 2007.  Specifically, defense counsel represented that he had been informed by the prosecutor that he had "received information that Trooper Havens was disciplined for conducing an illegal search, confiscating drugs, and intending or attempting to justify the search with the subsequent use of a drug-sniffing dog."  (Id. at ¶ 10.)  Defense counsel further represented that he was awaiting receipt of appropriate documentation from the Government.

On May 19, 2009, Judge McClure granted the motion for extension of the briefing schedule and continuance of the trial.  (Dkt. Entry 766.)  Judge McClure's Order indicated that a briefing schedule would be established after the Government had notified the Court that it had fulfilled its Brady disclosure requirements.  (Id.)

By Order dated June 11, 2009, Judge McClure severed the counts against defendant Best in light of the complications delaying a final ruling on the suppression motion. (Dkt. Entry 777.) On June 26, 2009, Judge McClure entered an Order of recusal, and the case was assigned to me. (Dkt. Entry 799.)

By letter dated August 6, 2009, the prosecutor presented to the Court for *in camera* review the PSP records pertaining to the disciplinary action taken against Trooper Tyson Havens. Government counsel also presented to the undersigned the PSP report of Trooper Bedell that indicated that a drug-sniffing dog had been at the exterior of 608 McMinn Avenue on October 2, 2007.[8]

On December 9, 2009, I conducted a conference call with counsel for the parties. During the course of the conference call, I indicated that there was no need to re-open the suppression hearing record to consider the PSP records concerning disciplinary action taken against Trooper Havens. Counsel concurred that additional briefing concerning the evidence presented at the April, 2009 hearings was not required, and that oral argument on the significance of that evidence and the challenge to the sufficiency of the search warrant affidavit would be appropriate. The oral argument was conducted on December 21, 2009.

---

[8] Trooper Bedell's report also indicates that the narcotics-trained dog was used in connection with the search of 828 Memorial Avenue on October 2, 2007 from approximately 6:00 a.m. until approximately 8:45 a.m. This residence was one of the properties for which a search warrant had been issued as part of the investigation in this wide-ranging narcotics trafficking conspiracy case.

II. DISCUSSION

   A. After-Discovered Impeachment Evidence

   As indicated above, a decision on Defendant's Motion for Reconsideration of the

original suppression ruling was deferred in light of the government's disclosure of

information pertaining to one of the state police officers who testified during the suppression

hearings conducted in the Fall of 2008. Specifically, as represented by defense counsel in

the Unopposed Motion for Extension of Briefing Schedule (Dkt. Entry 763):

> [O]n May 14, 2009, the Government disclosed additional information under
> Brady relative to one of the investigating officers, Trooper Tyson Havens, who
> was present and participated in Defendant Best's arrest on October 2, 2007.
> Specifically, similar to Defendant's Best's situation, the undersigned counsel
> has been advised by the Government counsel that they have received
> information that Trooper Havens was disciplined for conducting an illegal
> search, confiscating drugs, and intending or attempting to justify the search
> with the subsequent use of a drug-sniffing dog.

(Id. at ¶ 10.)[9]

   The PSP records pertain to a "Disciplinary Action Report" issued to Trooper Havens

on October 15, 2008, several weeks after he had testified in this matter.[10]  The Disciplinary

_____

   [9] As noted above, during a telephone conference conducted on December 9, 2009, I
informed counsel for the parties that the record on the suppression motion need not be re-
opened to consider the impact because the PSP records, although of impeachment value,
was not such as to undermine confidence in Judge McClure's decision to deny the original
suppression motion. This Memorandum Opinion amplifies on the reasons for this
conclusion.

   [10] It appears that the Disciplinary Action Report would not have been available at the
time that Trooper Havens testified.  Thus, this is not a case where the government

Action Report concerned an incident that occurred on June 20, 2008, following a vehicle stop and a subsequent search of the vehicle. There is no relationship between the prosecution of Defendant Best and the search of the vehicle that culminated with a disciplinary sanction against Trooper Havens.[11]

The government has a mandatory duty to disclose evidence in its possession that is favorable to the defense, "either because it was exculpatory or of impeachment value . . . ." Lambert v. Blackwelll, 387 F.3d 210, 252 (3d Cir. 2004). The government breaches the duty established by Brady v. Maryland, 373 U.S. 83 (1963), and its progeny, including Giglio v. United States, 405 U.S. 150 (1972), when it withholds such evidence, either willfully or inadvertently, and the withheld evidence is found to be "material." Id. In the context of non-disclosed impeachment evidence, materiality is assessed in terms of whether the reliability of the witness in question may well be determinative of the outcome of the proceedings. See Pennsylvania v. Ritchie, 480 U.S. 39, 66 (1987). That is, the evidence must be such that "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." Simmons v. Beard, 581 F.3d 158, 167 (3d Cir. 2009) (quoting United States v. Bagley, 473 U.S. 667, 682 (1985)). Stated

_____

breached some obligation to present Brady material prior to Trooper Havens taking the witness stand. Instead, this is a case involving the discovery of potential Brady material after the hearing has concluded.

[11] Because the PSP records were submitted for *in camera* review, no detailed disclosure of the contents of those records will be made in this Opinion.

otherwise, "the relevant question is: 'when viewed as a whole and in light of the substance of the prosecution's case, did the government's failure to provide . . . [the] Brady impeachment evidence to the defense . . . lead to an untrustworthy [result]. . . .'" Lambert, 387 F.3d at 253 (citations omitted).

In the matter sub judice, the PSP records could serve to impeach the credibility of Trooper Havens. At a minimum, the records suggest that Trooper Havens omitted to inform a prosecuting attorney of Trooper Havens' discovery of incriminating evidence during an inventory search of the vehicle in question when he sought the prosecuting attorney's authorization to obtain a search warrant. In light of the limited role Trooper Havens played in this case, however, impeachment of his credibility would not undermine confidence in the outcome of the suppression hearing.

At the suppression hearing held on September 23, 2008, Trooper Havens testified that his only involvement in this matter was to assist in the execution of warrants to arrest Best and Leanika Johnson on October 2, 2007. (Suppression Hr'g Tr., Vol 1, at 16.) Trooper Havens testified that he was part of an arrest team that arrived at 608 McMinn Avenue at about 6:30 a.m. on October 2, 2007. (Id. at 11.) He explained that he was the third person through the front door of the premises. He immediately proceeded up a flight of stairs, where he observed Defendant Best already lying on the ground and being secured. (Id. at 12.) He escorted Defendant Best down the stairs (id.), and then conducted

a protective sweep of the first floor and basement of the home. (Id. at 20.) Consistent with the testimony of other officers, he stated that he was at the premises for about 30 minutes. (Id. at 13.)[12] Trooper Havens, as did all other officers, testified that Sergeant Tripp and Corporal Warner remained with the children of Sean Best and Leanika Johnson when the other members of the arrest team departed the scene. (Id. at 14.)

It is the defense theory that a thorough search of the premises was conducted on October 2, 2007, one day before a search warrant was procured. Significantly, however, there is no evidence that a complete search was conducted prior to the removal of the children by C&Y staff. Ivan Northington, defendant Best's son, testified that, following the arrival of C&Y staff, he was escorted to his bedroom to retrieve personal items for the day. (Suppression Hr'g Tr., Vol.3, Dkt. Entry 743, at 10.) He did not testify that a thorough search of the premises had been conducted prior to his retrieval of his personal belongings on the morning of October 2, 2007. Instead, he testified that he saw an officer with a police dog enter the premises as the minivan in which he was a passenger was pulling away. (Id. at 11-12.) He further testified that upon his return to the premises during the afternoon of October 2, 2007, he observed items having been pulled out of drawers in his father's room, with the door to the house having been unlocked. (Id. at 13.)

In short, there is no evidence to support a reasonable inference that a thorough

---

[12] The witnesses were sequestered during the hearing. (Id. at 9.)

search of the premises was conducted before the removal of Defendant Best's sons. Furthermore, there is no evidence that Trooper Havens remained at the premises to await the arrival of C&Y staff.  Under these circumstances, cross-examination of Trooper Havens with information pertaining to the June 20, 2008 incident that formed the predicate for the PSP Disciplinary Action Report would not affect the conclusion that the law enforcement officers had not exceeded the scope of a protective sweep while Trooper Havens was still at the premises.  Stated otherwise, "[t]here is no 'reasonable probability' that had the information been disclosed, the result of the suppression hearing would have been different."  United States v. Boechler, 220 F. App'x. 688, 689 (9th Cir. 2007).

There is an additional compelling reason why disclosure of the impeachment evidence would not alter the outcome of the suppression motion: even assuming an improper search occurred on October 2, 2007, the results of the October 3, 2007 search may remain admissible under the "independent source doctrine."  DEA Special Agent Timothy Crowley applied for the warrant to search 608 McMinn Avenue.  In applying for the warrant, he made no mention of the October 2, 2007 arrest or of any observations made during the course of the entry into 608 McMinn Avenue to effect the arrests.  Because no information learned as a result of the entry into 608 McMinn Avenue on October 2, 2007 was used to obtain the search warrant, the results of the October 3, 2007 search could be suppressed only if it was shown that information illegally obtained on October 2, 2007

"prompted the officers to obtain a warrant . . . ." United States V. Herrold, 962 F.2d 1131, 1143 (3d Cir. 1992).

In Herrold, our Court of Appeals instructed that where, as here, a defendant claims that evidence discovered during a warrant-based search was the product of an earlier unlawful warrantless search, the court should address the following questions:

> (1) Whether a neutral justice would have issued the search warrant even if not presented with information that had been obtained during an unlawful search and (2) whether the first search prompted the officers to obtain the search warrant.

Id. at 1144. In this case, there is no evidence that Judge Muir was presented with any information learned as a result of the entry into the premises on October 2, 2007. Thus, the dispositive question here is whether information learned during the entry into the premises on October 2, 2007 prompted Special Agent Crowley to obtain the search warrant. In this regard, it is significant that Special Agent Crowley was not at 608 McMinn Avenue on October 2, 2007. Moreover, there is no evidence that Special Agent Crowley was informed of the results of any search of the premises that occurred on October 2, 2007.

Special Agent Crowley testified that information obtained from CI#4 after securing the warrants to arrest Best and Johnson prompted the decision to seek a search warrant for 608 McMinn Avenue. (Suppression Hr'g Tr., Vol. 2, at 20-21.) Special Agent Crowley explained that he spoke with CI#4 multiple times on October 2 and 3, 2007, as well. He stated that CI#4 told him that Defendant Best had recently traveled to Philadelphia to obtain

18

a supply of narcotics, and that the drugs were believed to be concealed in a cereal box at 608 McMinn Avenue. (Id. at 31.) Special Agent Crowley's affidavit asserts that CI#4 stated on October 3, 2007, the day following the arrest, that "the drugs are still concealed at 608 McMinn Avenue. . . ." (Application and Affidavit for Search Warrant at ¶ 40.)

It is thus evident that Special Agent Crowley was motivated by circumstances independent of any observations made in connection with the October 2, 2007 entry into the premises to seek a search warrant. In this regard, the question here is not whether the law enforcement officers should have applied for a warrant to search the premises prior to executing the arrest warrants on October 2, 2007. See United States v. Price, 558 F. 3d 270, 282 (3d Cir. 2009). Instead, the question is whether Agent Crowley would have applied for a warrant irrespective of observations made on October 2, 2007 while law enforcement agents were inside 608 McMinn Avenue. Special Agent Crowley's affidavit and testimony compel an affirmative answer to this essential premise of the independent source doctrine. Accordingly, even if the testimony of Trooper Havens as well as the other law enforcement officers present on October 2, 2007 were discredited such that it was reasonable to infer that more than a protective sweep occurred on that day, the evidence obtained on October 3, 2007 would not be subject to suppression, assuming, of course,

probable cause supported the search warrant obtained on that day.[13]

   B.  Probable Cause to Issue the Search Warrant

   Probable cause sufficient to support the issuance of a search warrant is defined as
"a fair probability that contraband or evidence of a crime will be found in a particular case."
Illinois v. Gates, 462 U.S. 213, 238 (1983).  As the Court in Gates elaborated, "probable
cause is a fluid concept, turning on the assessment of probabilities in particular factual
contexts – not readily, even usefully, reduced to a neat set of legal rules." Id. at 232.

   Where, as here, another judicial officer has concluded that probable cause was
established by a search warrant affidavit, "a reviewing court must remember that its role is
limited." United States v. Jones, 994 F.2d 1051, 1055 (3d Cir. 1993).  A judicial officer's
"determination of probable cause should be paid great deference by reviewing courts."
Gates, 426 U.S. at 236 (quotation omitted).  "Keeping in mind that the task of the issuing
magistrate is simply to determine whether there is a 'fair probability that contraband or
evidence of a crime will be found in a particular place,' a reviewing court is to uphold the
warrant as long as there is a substantial basis for a fair probability that evidence will be
found." United States v. Conley, 4 F.3d 1200, 1205 (3d Cir. 1993) (quoting Gates, 426 U.S.
at 238).  Thus, review of Judge Muir's determination that probable cause for the search

---

[13] Consideration of the independent source doctrine obviates a determination of
whether Defendant Best is procedurally barred from challenging the sufficiency of the
search warrant application by his failure to raise the issue in his original suppression motion.

warrant existed is not *de novo*.  Jones, 994 F.2d at 1055.  "Even if a reviewing court would not have found probable cause in a particular case, it must nevertheless uphold a warrant so long as the issuing magistrate's determination was made consistent with the minimal substantial basis standard."  Conley, 4 F.3d at 1205.  And while the deferential standard of review "does not mean that reviewing courts should simply rubber stamp a magistrate's conclusions," United States v. Tehfe, 722 F.2d 1114, 1117 (3d Cir. 1983), "the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Gates, 462 U.S. at 237 n. 10 (quotation omitted).

The affidavit presented to Judge Muir provided a substantial basis for concluding that there was a fair probability that evidence of criminal activity would be found at 608 McMinn Avenue.  Although Defendant Best focuses his arguments on the three paragraphs directed specifically to 608 McMinn Avenue, "[t]he supporting affidavit must be read in its entirety and in a common sense and nontechnical manner." Conley, 4 F.3d at 1206 (citing Gates 462 U.S. at 230-31).

The affidavit details information supplied by five confidential informants.  Special Agent Crowley averred that he was familiar with each confidential informant, and each had provided information in the past that had proved to be reliable and had been corroborated by independent sources.  (Search Warrant Affidavit, ¶ 9.)  The affidavit informed the issuing judge that a federal grand jury had returned a sealed indictment charging Best and Leanika

21

Johnson, along with a number of other persons, in a wide ranging drug trafficking conspiracy. The affidavit indicated that a number of the distribution counts set forth in the indictment concerned transactions that occurred at the residences of the conspirators. Significantly, the affidavit detailed two controlled purchases from Leanika Johnson from 723 High Street, where she was then residing. The affidavit also indicated that Defendant Best was present for one of the transactions. (Search Warrant Affidavit at ¶¶ 19-20.)

With respect to 608 McMinn Avenue, the affidavit relates that Best and Johnson were residing at 608 McMinn Avenue. The affidavit asserts that Best and Johnson had previously sold crack cocaine and cocaine from their residences, including their residence at 723 High Street. The affidavit then relates that CI#4 had informed Special Agent Crowley that Best had recently traveled to Philadelphia and obtained a quantity of cocaine and was storing it at 608 McMinn Avenue.

Defendant Best argues that the warrant application for 608 McMinn Avenue "provided insufficient factual detail to confirm the alleged confidential informant's veracity, reliability, and basis of knowledge." (Brief in Support of Motion for Reconsideration, Dkt. Entry 737, at 4.) In making this argument, Defendant Best focuses exclusively on the information supplied by CI#4 that Best had traveled to Philadelphia on September 30, 2007, had returned to Williamsport on October 1, 2007 with a quantity of cocaine, and that, "[o]n October 3, 2007, CI#4 also stated that the drugs were still concealed at 608 McMinn

Avenue . . . ." (Search Warrant Affidavit at ¶ 40.) Best argues that because the law enforcement officials had concluded that they lacked probable cause to seek the search warrant prior to his arrest on October 2, 2007, the only information that should be assessed in determining the existence of probable cause is the "conclusory statement to the DEA agent that 'drugs are still concealed at 608 McMinn Avenue'. . . ." (Id. at 8.)

The attention Best directs to ¶ 40 of the search warrant affidavit ignores the instruction to reviewing courts that "statements in the affidavit may not be read in isolation – the affidavit must be read as a whole." Conley, 4 F.3d at 1208. The affidavit in this case was executed by a DEA Special Agent with twelve years of experience. The affiant attested to the fact that "drug traffickers store at their residences narcotics for distribution." (Search Warrant Affidavit at ¶ 6.)

The affiant further swore under oath that he was familiar with the five confidential informants, including CI#4, who had provided reliable information in the past that had been corroborated by independent sources. (Id. at ¶ 9.) Although no details were provided with respect to the information that had been supplied in the past and its corroboration, it has been recognized that an "affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable." United States v. Greene, 250 F. 3d 471, 480 (6th Cir. 2001). Thus, the judge issuing the warrant had a substantial basis for finding CI#4 to be reliable.

Moreover, the reliability of CI#4 was substantiated by his participation in a controlled purchase from other participants in the drug trafficking conspiracy, as detailed in ¶ 24 of the Search Warrant Affidavit. CI#4 also provided information that was consistent with statements made by other confidential informants concerning the creation of a passageway in the attic between 723 High Street and 725 High Street, the type of "inside information" that supports a conclusion that the informant has access to the participants in the conspiracy.

in assailing Judge Muir's decision to issue a search warrant in this case, Best relies upon United States v. Stearn, 548 F.Supp. 2d 182 (E.D. Pa. 2008). Unlike the affidavit considered by Judge Muir in this case, however, the affidavit in Stern provided "no assertion the officers believed the confidential informant, no history of past cooperation by the informant, no drug buys by the informant, and no inside information supplied by the informant." Id. at 190. By way of contrast, CI#4 had a history of past cooperation, had made at least one controlled drug buy, and had inside information.

Moreover, the search warrant affidavit described at least two transactions involving Leanika Johnson conducted at 723 High Street when she and Best resided there. The fact that a drug trafficker is conducting narcotics trafficking transactions from her prior residence supports an inference that the drug trafficker would store drugs and other accouterments of criminal activity at her current residence.

The fact that the affidavit does not contain any averment that Best participated in a drug sale on his own is irrelevant to the question of whether there was probable cause to search the premises of a known drug trafficker. After all, "search warrants are directed, not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of crime will be found." Tehfe, 722 F.2d at 1117. In this case, the affidavit established that Leanika Johnson was residing at 608 McMinn Avenue and had a history of engaging in drug transactions from her residence. Coupled with the information supplied by CI#4 concerning Best's recent acquisition of a supply of narcotics, there was plainly a substantial basis for the finding of probable cause to search 608 McMinn Avenue.

Finally, the affidavit disclosed that Best and Johnson had been indicted, thus establishing probable cause for their arrests. As our Court of Appeals has recognized, "[i]f there is probable cause to believe that someone committed a crime, then the likelihood that the person's residence contains evidence of the crime increases." Jones, 994 F.2d at 1055-56. Furthermore, our Court of Appeals has also acknowledged that "[i]n the case of drug dealers, a number of other courts of appeals have held that evidence of involvement in the drug trade is likely to be found where the dealers reside." United States v. Whitner, 219 F.3d 289, 297 (3d Cir. 2000). Thus, the issuing judge need not be presented with "[d]irect evidence that contraband or evidence is at a particular location," but may instead, "draw reasonable inferences about where evidence is likely to be kept, based on the nature of the

offense and the type of offense." United States v. Henson, 123 F.3d 1226, 1238-39 (9th Cir. 1997). That evidence of drug dealing is likely to be found where drug dealers live, considered in the context of all the information provided in the 40-numbered paragraphs of Special Agent Crowley's affidavit, provided a substantial basis for the issuing Judge to find probable cause supporting the search warrant in this case.

To be sure, it would have been helpful to know how CI#4 knew that Defendant Best had traveled to Philadelphia on September 30, 2007, and had returned on October 1, 2007, with a quantity of cocaine that he was storing at 608 McMinn Avenue. Moreover, in light of the fact that Best and Johnson had been arrested on October 2, 2007, the assertion in the search warrant affidavit that "[o]n October 3, 2007, CI#4 also stated that the drugs are still concealed at 608 McMinn Avenue," is facially and linguistically perplexing. But an affidavit supporting a search warrant application must be read "in a common sense and nontechnical manner." Conley, 4 F.3d at 1206. Furthermore, our Court of Appeals has instructed that "a 'grudging or negative attitude by reviewing courts towards warrants 'is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant. " Jones, 994 F.2d at 1057. Consistent with this admonition, I find that the search warrant affidavit provided a substantial basis for the conclusion that there was a fair probability that

contraband or evidence of criminal activity would be found at 608 McMinn Avenue.[14]

III. CONCLUSION

For the reasons set forth in the foregoing Memorandum, Defendant Sean Best's motion for reconsideration and supplemental motion for suppression of evidence will be denied. An appropriate Order follows.

s/ Thomas I. Vanaskie
Thomas I. Vanaskie
United States District Judge

---

[14] In light of this determination, there is no need to reconsider Judge McClure's finding that law enforcement officers did not exceed the scope of a permissible protective sweep on October 2, 2007. Even if they had conducted an impermissible warrantless search on October 2, 2007, the independent source doctrine would preclude the suppression of the evidence obtained on October 3, 2007. It does bear noting, however, that Defendant's theory of a warrantless search on October 2, 2007 lacks evidentiary support. A court would have to conclude that officers entered the house after the children were removed, conducted a search, found incriminating evidence, and then fabricated the receipt of evidence from CI#4 while concealing from Judge Muir the illegal search in order to return to the premises on October 3, 2007. There simply is no evidence to support a determination that the law enforcement officers from a number of different agencies engaged in such nefarious conduct.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :
                               :
       v.                      :       4:CR-07-389-01
                               :       (JUDGE VANASKIE)
SEAN BEST                      :
                               :

_____ ORDER

        NOW, THIS 23rd DAY OF DECEMBER, 2009, for the reasons set forth in the

foregoing Memorandum, IT IS HEREBY ORDERED THAT Defendant Sean Best's Motion

for Reconsideration of Suppression Hearing Order and Supplemental Motion for

Suppression (Dkt. Entry 726) is DENIED.

                               s/ Thomas I. Vanaskie
                               Thomas I. Vanaskie
                               United States District Judge